*In re* CORTES.

*(Circuit Court, S. D. New York.   April 17, 1890.)*

EXTRADITION—EMBEZZLEMENT OF PUBLIC FUNDS.

Under the Penal Code of Cuba, art. 401, which makes it a crime for a public employe to take public funds of which he has charge by virtue of his office, a public officer who, by falsely certifying the invoices in which certain coupons are inclosed, obtains possession of money paid out by the Spanish bank, which could not pass from the bank's possession to his own except as a consequence of his official act, is guilty of an extraditable offense.

Application for Extradition.

*Olcott, Mestre & Gonzales*, for the Spanish Government.

*S. Mallet-Provost*, for relator.

LACOMBE, J.   If, when abstracted by the prisoner, the coupons were not perforated, but were in such condition that *bona fide* holders for value could recover on them, they were, undoubtedly, public funds. If they were canceled or imperfect when he took them, his subsequent action in preparing and certifying the invoices in which they were inclosed, and

in auditing the same as a claim against the Spanish government, caused the intendant to indorse the same, and the Spanish bank to pay. The affixing of the prisoner's signature to his certificate or audit was an act done by virtue of his office, deriving its sole force from the confidence placed in it by other officials as the act of a public officer in the line of his official duty. By discharging, therefore, falsely, and with corrupt intent, the functions of his office, he got possession of certain moneys paid out by the Spanish bank which could not have passed from the bank's possession to his own except as a consequence of his official action. Of these moneys, therefore, he obtained charge by virtue of his office, and thereupon converted them to his own use. That the moneys thus paid out by the Spanish bank were public funds admits of no doubt. They were either moneys standing to the credit of the Spanish government by reason of the circumstance that that government had theretofore deposited cash or its equivalent with the bank, or if, under some contract, (referred to upon the argument, but not in proof,) they were advanced by the Spanish bank from time to time upon drafts of the government, which, at the time such drafts were presented, had no moneys standing to its credit in the bank, then, at the moment when the bank advanced the money to cash the draft, the money so advanced became cash, the proceeds of a loan made by the bank to the government, and therefore public funds. Defendant's acts, therefore, seem to be within the terms of article 401 of the Spanish Penal Code of Cuba, which reads, according to the translation submitted by prisoner's counsel, as follows:

"Art. 401. A public employe who, having charge, by virtue of his office, of public funds or effects, takes, or allows others to take, the same, shall be punished," etc.

Acts such as his are also made criminal by express statutes of the United States and of the state of New York. Rev. St. U. S. § 5438; Pen. Code, N. Y. § 165. It is true that the complaint does not refer to the moneys thus obtained from the bank, but, under the peculiar language of the eleventh and twelfth articles of the treaty, this court will look into the warrant of arrest issued in the country from which the prisoner has fled for a specific statement of the offense which it is claimed he has committed; and the prisoner can certainly not object that he is not sufficiently informed of the offense with which he is charged, when he is apprised of the contents of that document. The prisoner may be produced on Friday morning for further disposition.